Slip Op. 19-90

## UNITED STATES COURT OF INTERNATIONAL TRADE

| | |
|---|---|
| **NEW IMAGE GLOBAL, INC.,** | |
| Plaintiff, | |
| v. | Before: Jane A. Restani, Judge |
| **UNITED STATES,** | Consol. Court No. 15-00175 |
| Defendant, | |

## OPINION AND ORDER

[Regarding tobacco excise taxes, Defendant's motion for summary judgment is granted and Plaintiff's motion for summary judgment is denied]

Dated: July 23, 2019

Elon A. Pollack and Matthew R. Leviton, Stein Shostak Shostak Pollack & O'Hara, LLP, of Los Angeles, CA, for the plaintiff, New Image Global, Inc.

Justin R. Miller, Attorney-in-Charge, International Trade Field Office, U.S. Department of Justice, of Washington, DC, for the defendant. With him on the brief were Joseph H. Hunt, Assistant Attorney General, Jeanne E. Davidson, Director, and Hardeep K. Josan, Trial Attorney, Civil Division, U.S. Department of Justice, Commercial Litigation Branch. Of Counsel on the brief were, Beth C. Brotman and Yelena Slepak, Attorneys, Office of Assistant Chief Counsel, International Trade Litigation, U.S. Customs and Border Protection, of New York, NY.

Restani, Judge: This matter arises from a challenge to the excise tax assessed against

Plaintiff New Image Global, Inc. ("New Image") by the United States Customs and Border

Protection ("Customs"). New Image and Defendant ("the Government") have filed cross-

motions for summary judgment. See Def.'s Mot. for Summ. J., ECF No. 91 (Dec. 7, 2018) ("Def.

Mot. S. J."); Pl.'s Rev. Mot. for Summ. J., ECF No. 96 (Dec. 7, 2018) ("Pl. Mot. S. J."). The

core legal issue before the court is whether or not Customs' procedures for weighing New

Image's tobacco "wraps"[1] in order to assess the proper excise tax owed is in accordance with the law. For the reasons stated below, defendant's motion for summary judgment is granted and plaintiff's motion is denied.

## BACKGROUND

In 2009, Congress passed the Children's Health Insurance Program Reauthorization Act, which expanded the federal excise tax on tobacco products to include "roll-your-own tobacco." See Children's Health Insurance Program Reauthorization Act of 2009, Pub. L. No. 111-3 (2009); 26 U.S.C. § 5702(o) (2016).[2] New Image is a producer of homogenized tobacco cigar wraps ("wraps") that qualify as "roll-your-own-tobacco."[3]  Pl's. Statement of Undisputed Facts ¶ 1, ECF. No. 94-1 (Dec. 7, 2018) ("Pl. Stmt. Facts"); Def.'s Resp. to Pl.'s Statement of Undisputed Facts ¶ 1, ECF No. 102-1 (Apr. 8, 2019) ("Def. Resp. Pl. Stmt.); see 26 U.S.C. § 5702(o). New Image declared a 0.75 grams per XXL style wrap on its entry documents 2009–2012. Pl. Stmt. Facts ¶ 26; Def.'s Statement of Undisputed Facts ¶ 7, ECF. No. 91 (Dec. 7, 2018) ("Def. Stmt. Facts").

In 2011, Customs began investigating New Image for alleged underpayment of excise tax. Pl. Stmt. Facts ¶ 27–29; Def. Resp. Pl. Stmt. ¶ 27. In December 2011, Customs conducted the first weighing of New Image's tobacco products for excise tax calculation purposes using the

---

[1] As the parties do, we use the commercial term "wraps" as opposed to the common term "wrapper."

[2] Roll-your-own-tobacco is defined as: "any tobacco which, because of its appearance, type, packaging, or labeling, is suitable for use and likely to be offered to, or purchased by, consumers as tobacco for making cigarettes or cigars, or for use as wrappers thereof." 26 U.S.C. § 5702(o).

[3] The style of tobacco cigar wraps at issue in the present case are EZ Roll/XXL style wraps, which New Image, a U.S. company, produces in its factory in Mexico. Pl. Stmt. Facts ¶ 7; Def. Stmt. Facts ¶ 7.

"direct" method. Pl. Stmt. Facts ¶¶ 29–31; Def. Resp. Pl. Stmt. ¶ 31. The "direct" method

consisted of Customs removing the tobacco cigar wraps from the packaging and, after letting the

wraps dry for twenty-four hours, placing a wrap directly on a scale. Pl. Stmt. Facts ¶ 31; Def.

Resp. Pl. Stmt.¶ 31. The average calculated weight using this method was 0.71 grams per wrap.

Pl. Stmt. Facts ¶ 32; Def. Resp. Pl. Stmt.¶ 32.

During the investigation, and in response to a memorandum from an import specialist, the

Customs laboratory conducted a second weighing of New Image's wraps. See Def. Stmt. Facts ¶

8; Pl.'s Resp. to Def.'s Statement of Undisputed Facts ¶ 8, ECF. No. 103-2 (Apr. 8, 2019) ("Pl.

Resp. Def. Stmt.") ¶ 8. The second weighing occurred in April 2012, using what Customs

referred to as the "indirect method." Pl. Stmt. Facts ¶ 38; Def. Resp. Pl. Stmt. ¶¶ 38. The

"indirect" method entails measuring the weight of the sealed product, then separately measuring

the weight of all materials without the tobacco wrap, and "indirectly" achieving the weight of the

tobacco cigar wrap by subtracting the weight of the non-tobacco materials from the weight of the

sealed product.[4] Pl. Stmt. Facts ¶¶ 38, 39; Def. Resp. Pl. Stmt. ¶ 38. Customs claims the

"indirect" method[5] was used in order to account for the dissipation of volatile flavor additives,[6]

which caused the wraps to lose weight once the packages were opened and as the wraps dried.

---

[4] Each individual package contained two tobacco papers, two straws, and sometimes two game
pieces. The weight of the tobacco paper recorded was the weight of the sealed package minus the
wrapper, straws, and game pieces. See Reports from Customs Laboratory, Ex. 19, ECF No. 91-
19, (April 16, 2012).

[5] The "indirect" method is also referred to as the "difference" method. Pl.'s Reply to Def.'s
Opp'n to Pl.'s Mot. for Summ. J. at 7, 24, ECF No. 107 (May 31, 2019) ("Pl. Reply Br.").

[6] New Image's tobacco wraps contain varying percentages of ethanol, water, and other chemicals
in liquid form that are sprayed on the strips of tobacco and binder material of the wrap. Pl. Br. at
5; see also Def.'s Resp. to Pl.'s Mot. for Summ. J. at 3–4, ECF No. 102 (Apr. 8, 2019) ("Def.
Resp. Br."). The court will refer to these chemicals as "additives" throughout this opinion.

<u>See</u> Pl. Stmt. Facts. ¶ 31; Def. Resp. Pl. Stmt. ¶ 31. This method resulted in weights ranging

from 0.875 to 0.96 grams per wrap, with an average weight of 0.915 grams per wrap. Pl. Resp.

Def. Stmt. ¶ 41; Def. Stmt. Facts ¶ 10.

In September 2012, New Image made two entries of the wraps at issue here: Entry

Number BIM-1124040-0, on September 5, and BIM-1124346-1 on September 17, at the port of

San Diego, California. Def. Stmt. Facts ¶¶ 1, 2; Pl. Resp. Def. Stmt. ¶¶ 1, 2. New Image declared

the weight of the imported tobacco cigar wraps on its entry documents to be ".75 gm per wrap,"

as it had claimed previously. Pl. Stmt. Facts ¶ 26; Def. Resp. Pl. Stmt. ¶ 26.

On November 19, 2014, Customs issued a notice of action to New Image for these two

entries. Def. Stmt. Facts ¶ 13; Pl. Resp. Def. Stmt. ¶ 13. In the notice of action, Customs used the

0.915 grams per wrap average weight from its second weighing to determine the proper excise

tax for the imported wraps, rather than New Image's declared weight of 0.75 grams per wrap.

Def. Stmt. Facts ¶¶ 11, 14; Pl. Resp. Def. Stmt. ¶¶ 11, 14.

In December 2014, Customs liquidated the entries with an increased excise tax based on

the 0.915 weight. <u>See</u> Protest Denial, ECF No. 10 (June 10, 2015) (noting the date of liquidation

as December 29, 2014). New Image protested the liquidation, which Customs subsequently

denied. <u>Id.</u> The denial was issued "because the invoice weights were contrary to, and

significantly lower than, New Image's own manufacturer's production weights, and were not

based on any scientific methodology." <u>Id.</u>

On July 1, 2015, New Image filed a timely Complaint against Customs in this court.

Complaint, ECF No. 6 (July 1, 2015). On January 20, 2016, a scheduling order was issued to

begin discovery, <u>see</u> Scheduling Order, ECF No. 19 (Jan 20, 2016), and took place over the next

two years. <u>See</u> Amended Scheduling Order, ECF. No. 74 (Aug. 28, 2017). On December 7,

2018, the parties filed cross-motions for summary judgment. <u>See</u> Def. Mot. S. J.; Pl. Mot. S. J.

On April 8, 2019, both the Government and New Image responded to each other's motion for

summary judgment, <u>see</u> Def. Resp. Br.; Pl.'s Resp. in Opp'n to Def.'s Mot. for Summ. J., ECF

No. 103 (April 8, 2019) ("Pl. Resp. Br."), and subsequently submitted their corresponding reply

briefs on May 31, 2019. <u>See</u> Def.'s Reply Br. in Supp. of its Mot. for Summ. J., ECF No. 106

(May 31, 2019) ("Def. Reply Br."); Pl. Reply Br. Because the parties present a variety of

detailed and complex arguments, the following opinion addresses the factual background for

each in turn.

## JURISDICTION AND STANDARD OF REVIEW

The court has jurisdiction pursuant to 28 U.S.C. § 1581(a) (protest denied jurisdiction).

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any

material fact and the movant is entitled to judgment as a matter of law." USCIT Rule 56(a).

Material facts are those "that might affect the outcome of the suit under the governing law."

<u>Anderson v. Liberty Lobby</u>, <u>Inc.</u>, 477 U.S. 242, 248 (1986). Denied protests are subject to de

novo review "upon the basis of the record made before the court." <u>See</u> 28 U.S.C. § 2640(a)(1).

## DISCUSSION

**I.    Incongruity Between New Image's Complaint and Motion for Summary Judgment**

Before moving to the central legal issues raised in New Image's motion for summary

judgment, the court addresses the Government's assertion that New Image raises issues in its

motion for summary judgment that significantly differ from the claims raised in its Complaint.

Gov. Resp. Br. at 29–30. Upon review, the court agrees that the motion diverges significantly

from the claims in the Complaint. Accordingly, the court must consider whether the claims

raised in the Complaint are deemed waived by New Image's failure to brief them in its motion

and whether the claims raised by New Image in its motion, but not included in the Complaint,

are properly before the court for review.

In the Complaint, New Image raised five claims: (1) Customs' improper delegation of

authority to calculate New Image's excise tax to the Alcohol and Tobacco Tax and Trade Bureau

("TTB"), Compl. ¶¶ 21–23, (2) Customs' failure to include a calculation of the tax owed and the

amount of the rate advance in the Notice of Action, Compl. ¶¶ 24–25, (3) Customs' failure to

properly calibrate the scale used to weigh the tobacco wraps and subsequent reliance on

unreliable data in assessing tax liability, Compl. ¶¶ 26–27, (4) Customs' weighing of sample

products not taken from the entries at issue, but from an earlier shipment of similar products,

Compl. ¶¶ 28–29, and (5) Customs' failure to comply with notification of liquidation

requirements. Compl. ¶¶ 30–31. New Image then asked that the court order reliquidation of the

entries at the invoice rate of 0.75 grams and refund New Image accordingly, order that Customs

comply with the notice of liquidation requirements in 19 C.F.R. § 159.9 (2016), and order that

Customs produce actual entry documents for inspection and declare the liquidation date as the

date that these documents are made available to the importer. Compl. at 9.

In its motion for summary judgment, however, New Image changes course and argues (1)

that the TTB Ruling referenced by Customs should be disregarded and/or interpreted differently,

Pl.'s Mem. in Supp. of Pl.'s Mot. for Summ. J. ("Pl. Br.") at 15–18, ECF No. 94 (Dec. 7, 2018),

(2) that Customs' first wrap weighing should be used for assessing the taxation rate, Pl. Br. at

18–23, and (3) that the second test was scientifically unreliable for multiple reasons. Pl. Br. at

32–34. For relief, New Image now asks that the court order that Customs use the 0.71 gram per

wrap weight from Customs' first weighing to assess the excise tax owed. Pl. Br. at 38. Although

New Image raises some claims that are similar to those in in its Complaint, they are notably different.

The Government argues that New Image has waived the claims in its Complaint that were not briefed in its motion for summary judgment. Def. Reply Br. at 2. Whether or not that is so, New Image has waived those claims because the Government raised them in its motion for summary judgment and New Image failed to respond to them. See Fed. R. Civ. P. 56(e); Saab Cars USA, Inc. v. United States, 434 F.3d 1359, 1369 (Fed. Cir. 2006) (noting that when a party fails to respond to an opposing party's motion for summary judgment, a court can enter judgment against the nonresponsive party if the moving party is otherwise entitled as matter of law). Accordingly, the court grants the Government's motion for summary judgment as it relates to (1) the omission of calculations of taxes owed by New Image in the Notice of Action, (2) Customs' purported failure to comply with notification of liquidation requirements, and (3) the representativeness of the wrap samples weighed by Customs.[7]

The court also holds that New Image did not properly respond to Customs' explanation regarding the calibration of the scale. New Image, in a footnote, states that it "continues to question whether Customs properly calibrated the scale," but that the issue is "peripheral to the core legal issues that control the outcome of the litigation." Pl. Resp. Br. at 3 n.2. Because New Image did not respond with any legal argument or specific material facts to contradict the Government's assertion that Customs properly calibrated the scale, this issue is also deemed

---

[7] In two footnotes, New Image concedes that the "'notice of liquidation' argument" made in the Complaint is "no longer pertinent to the court's review and disposition of this case," and that it is no longer challenging the representativeness of the wraps weighed by Customs. Pl. Resp. Br. at 2–3, ns.1–2.

waived. See Saab Cars, 434 F.3d at 1369; USCIT Rule 56(e) (facts may be considered

undisputed for purposes of the summary judgment motion when not contested).

In filing its motion for summary judgment, the Government's argument understandably

relied on the Complaint and accordingly addressed the claims raised therein. Although the

Government was not properly on notice regarding the changes to New Image's argument when

the Government filed its motion, it was made aware by New Image's motion and was able to,

and did, respond to the newly-raised arguments in its response and reply. The court now

considers whether the claims raised in New Image's motion for summary judgment, but not

made in its Complaint, are properly before the court.

Rule 15(b)(2) of the Rules of the USCIT allow an issue not raised in a pleading to be

tried by "the parties' express or implied consent" as if it had been properly raised in the

pleadings. USCIT R. 15(b)(2). This Rule substantively mirrors Federal Rule of Civil Procedure

15(b)(2).[8] See NSK Corp. v. United States, 593 F. Supp. 2d 1355, 1362 n.6 (CIT 2008) (stating

that given the similarity between the two sets of rules, jurisprudence from other circuits is a

"valuable interpretative tool"). Subsection 15(b) in both the USCIT Rules and FRCP applies to

---

[8]  The following are the texts of the two provisions with the differences in language underlined:

The FRCP reads: "(2) For Issues Tried by Consent. When an issue not raised by the pleadings is tried by the parties' express or implied consent, it must be treated in all respects as if raised in the pleadings. A party may move—at any time, even after judgment—to amend the pleadings to conform them to the evidence and to raise an unpleaded issue. But failure to amend does not affect the result of the trial of that issue."

The USCIT Rule reads: "(2) For Issues Tried by Consent. When an issue not raised by the pleadings is tried by the parties' express or implied consent it will be treated in all respects as if it had been raised in the pleadings. A party may move—at any time—to amend the pleadings to conform them to the evidence and to raise an unpleaded issue. But failure to amend does not affect the result of the trial of that issue."

"Amendments During and After Trial." See USCIT R. 15(b); Fed. R. Civ. P. 15(b). The Supreme

Court has not clarified, and the circuit courts are split as to whether this rule applies at the

summary judgment stage.[9] Neither the Federal Circuit nor this Court has directly opined on this

issue.[10] The court decides, in the interests of ruling on issues fairly presented, that the majority

---

[9] At least the Second, Fourth, Fifth, Sixth, Seventh, Ninth, and Tenth Circuits have applied Fed. R. Civ. P. 15(b) to arguments first raised in summary judgment motions. See New Mexico v. Dept. of Interior, 854 F.3d 1207, 1232 (10th 2017) (applying Fed. R. Civ. P. 15(b) at summary judgment); Bench Billboard Co. v. City of Cincinnati, 675 F.3d 974, 988 (6th Cir. 2012) (recognizing that the court has applied 15(b) at the summary judgment stage); People for Ethical Treatment of Animals v. Doughney, 263 F.3d 359, 367 (4th Cir. 2001) (applying Fed. R. Civ. P. 15(b) at summary judgment); Cruz v. Coach Stores, Inc., 202 F.3d 560, 569 (2d Cir. 2000) (same); Whitaker v. T.J. Snow Co., 151 F.3d 661, 663 (7th Cir. 1998) (same); United States ex rel. Canion v. Randall & Blake, 817 F.2d 1188, 1193 (5th Cir. 1987) (same); Jackson v. Hayakawa, 605 F.2d 1121, 1129 (9th Cir. 1979) (same); but see Crawford v. Gould, 56 F.3d 1162, 1168–69 (9th Cir. 1995) (holding that Rule 15(b) did not apply to an argument first raised sua sponte at a hearing on cross-motions for summary judgment). The Eleventh Circuit, by contrast, has refused to apply the rule at summary judgment. See Blue Cross Blue Shield v. Weitz, 913 F.2d 1544, 1550 (11th Cir. 1990) (Rule 15(b) is "inapposite" when case is decided on summary judgment rather than a trial). The Third and District of Columbia Circuits have acknowledged the issue but have not resolved it. See Liberty Lincoln-Mercury, Inc. v. Ford Motor Co., 676 F.3d 318, 327 (3d Cir. 2012) (assuming for the sake of argument, "without holding, that Rule 15(b) applies at summary judgment"); Indep. Petroleum Ass'n. of Am. v. Babbitt, 235 F.3d 588, 596 (D.C. Cir. 2001) (noting that "[i]t is an open question whether the Federal Rules permit parties to impliedly consent to 'try' issues not raised in their pleadings through summary judgment motions").

[10] This Court addressed a similar situation in Gen. Elec. Co.-Med. Sys. Grp. v. United States, 86 F. Supp. 2d 1291 (CIT 2000). In that case, a party submitted a proposed amended complaint in connection with its reply brief but failed to file a motion for leave to amend. Id. at 1299. The court refused to accept the amended complaint because of the failure to file the motion and similarly refused to accept it under USCIT Rule 15(b) because the case was decided on summary judgment and "by its terms [USCIT Rule 15(b)] applies only where a trial has been or is being held." Id. at 1299. This case was later reversed by the Federal Circuit, but that court did not reach a decision on whether the lower court "committed prejudicial error by failing to amend the pleadings to conform to the evidence under local rule 15(b)." Gen. Elec. Co.-Med. Sys. Grp. v. United States, 247 F.3d 1231, 1236 n.[1] (Fed. Cir. 2001). Here both parties have argued the issues raised in New Image's motion for summary judgment, thus that case is not instructive. Similarly, in another case, this Court decided that Rule 15(b) was not the "proper vehicle by which to raise [a] pending motion," in a case where motions for summary judgment were also pending. See Ford Motor Co. v. United States, 896 F. Supp. 1224, 1230 (CIT 1995). In that case, however, the defendant was actively objecting to the opposing party's motion and so was clearly

approach of applying Rule 15(b)(2) when a party raises an unpled issue at the summary

judgment stage is the proper course of action so long as the opposing party consents, implicitly

or explicitly, to argue the issue.

Although the Supreme Court has not ruled on whether Rule 15(b) applies at the summary

judgment stage, it has held that the rule applies at evidentiary hearings so long as the respondent

had "a full and fair opportunity to present evidence bearing on the claim's resolution" Banks v.

Dretke, 540 U.S. 668, 704–5 (2004) (internal quotations omitted). Thus, the touchstone in

deciding whether a party has impliedly consented is whether there is no motion, in essence, to

strike the argument and whether that party had fair notice and an opportunity to respond so as to

avoid being unfairly prejudiced by the new issue. See 6A CHARLES ALAN WRIGHT, ET AL.,

FEDERAL PRACTICE AND PROCEDURE § 1493 (3d ed. 2019) (noting that implied consent is

generally found in situations where an opposing party is not prejudiced, when a party has not

objected to a new argument, and when the opposing party has responded to the issue); see also

Dretke, 540 U.S. at 704–5. The court is satisfied that the parties have fully briefed the issues first

raised in New Image's summary judgment motion. Accordingly, the court finds there to be

implied consent for the court to address these issues and now considers the substance of those

claims. See Timken Co. v. United States, 630 F. Supp. 1327, 1332, n.1 (CIT 1986) (finding that

because the parties had fully briefed the issue, the parties had impliedly consented to the issue

such that amendment to the Complaint was not required).

---

not consenting to the newly-raised issue as required for a claim to be properly heard under
USCIT R. 15(b). Id. Accordingly, that decision is inapposite. Rule 15 is intended to allow for
flexibility and fairness and the court will not constrain it unduly here.

## II.     The Taxable Weight of Tobacco Wraps

New Image argues that the court should hold that Customs overreached its statutory

authority by taxing non-tobacco components of roll-your-own tobacco. Pl. Br. at 13–14; <u>see</u> 26

U.S.C. § 5702(o). It further takes issue with Customs' purported use of TTB Ruling 2009-1[11] as

a source of authority in interpreting the statute. <u>Id.</u> at 12–15.

In response, the Government argues that the statute makes clear that component parts of a

completed tobacco product are taxed, not just the tobacco content. Def. Resp. Br. at 10–16. By

way of example, the Government emphasizes, that when assessing the tax on cigars and

cigarettes, the statute has long been read to include the component parts, such as the filter or

mouthpiece, in the taxable weight. <u>Id.</u> at 15 (citing Rev. Rul. 64-11, 1964-1 C.B. 573 of the

Internal Revenue Service (holding that "filters or mouthpieces as an integral part of the finished

product . . . must be included in the weight of the cigars or cigarettes in determining the weight

of the product per thousand for tax purposes")). The Government argues that similarly the

additives in roll-your-own tobacco should be included in assessing the weight of the taxable

product. <u>Def. Resp. Br.</u> at 13–16. In regard to the TTB Ruling, while the Government argues that

New Image overstates its significance in Customs' decision, <u>id.</u> at 16–18, the Government points

out that Customs' consideration of the TTB's understanding in making its own determination

helps ensure consistency of excise tax application regardless of whether the product was

produced domestically or abroad. <u>Id.</u> at 18. Finally, the Government stresses that the TTB Ruling

---

[11] The TTB issued Ruling 2009-1 regarding the taxable weight of tobacco products in response
to requests for advice. In part, the TTB Ruling states that taxes on "roll-your-own tobacco are
based upon the amount (by weight) of the product removed from the factory or released from
customs custody." TTB Ruling 2009-1 at 3 (Apr. 23, 2009). Further, it states that everything that
is an "integral part of the finished product," should be included in the taxable weight "including
non-tobacco ingredients and components." <u>Id.</u>

is consistent with a longstanding rule of customs law that products be analyzed at the time of import and in the condition as imported. Id. at 14.

It is part of Customs' "revenue function" to assess and collect excise taxes on imports, which includes "classifying and valuing merchandise for purposes of such assessment." 6 U.S.C. § 215(1); see also 27 C.F.R. § 41.62 (discussing Customs' duty to collect internal revenue taxes on tobacco imports). New Image's argument that TTB somehow usurped this authority is not well taken. There is no indication that Customs acted out of some misplaced understanding that the TTB Ruling was somehow binding on its assessment of excise taxes. The record indicates that Customs merely considered the ruling and came to a similar conclusion on how to interpret the excise tax statute. As the court has noted previously, Customs may consider TTB determinations. See Shah Bros. v. United States, 770 F. Supp. 2d 1367, 1369 (CIT 2011) (noting that Customs considers TTB decisions in classifying tobacco products); Shah Bros. Cv. United States, 751 F. Supp. 2d. 1303, 1311–12 (CIT 2010) (discussing the authority of Customs to administer the excise tax over imported tobacco and the purview of the TTB over domestically produced tobacco). Customs is fully within its discretion to consider the TTB Ruling and keep its practices aligned with those of the TTB, if possible. In fact, given that a failure to consider the practice of TTB could potentially result in an unintended disparate treatment of domestic versus foreign tobacco products for excise tax purposes, Customs' consideration of the TTB Ruling was the preferred approach.

The statute defines roll-your-own tobacco as "any tobacco which, because of its appearance, type, packaging, or labeling, is suitable for use and likely to be offered to, or purchased by, consumers as tobacco for making cigarettes or cigars, or for use as wrappers thereof." 26 U.S.C. § 5702(o). The Government is correct that the additives are part of what

makes the product marketable and "suitable for use" for its intended purpose. Id.[12] Weighing all

components essential to the final product in determining the correct tax is in accordance with the

statute's definition of roll-your-own tobacco and is administratively practicable. 26 U.S.C. §

5702 (c) refers to "tobacco products" not just "tobacco." Had Congress intended to tax only the

tobacco itself, and not the entire processed tobacco product, then the excise tax statute would

have been written so that the tax is determined on the basis of raw tobacco inputs rather than

finalized products. Instead, Congress sought to expand the federal excise tax to include

previously excluded tobacco products. See Children's Health Insurance Program Reauthorization

Act of 2009, Pub. L. No. 111-3 (2009) (emphasis added) (expanding the statute to include roll-

your-own tobacco).

        In addition, to the extent New Image argues that the calculation of the weight of a

product at import is somehow a TTB Ruling creation or otherwise incorrect,[13] the court is

---

[12] In its reply brief, New Image argues that allowing the wraps to dry out does not render the product unusable. Pl. Reply Br. at 10–11. New Image's quality control supervisor, Mr. Felix Hernandez, however, explicitly states that the tobacco wraps needs to be sufficiently moist to be useable. See Deposition of Felix Hernandez at 130–132, Ex. 11, ECF No. 91-11 (Nov. 2, 2016) (confirming that if the wrap is "not appropriately dampened, you can't use it" and that New Image sought a weight of .864 grams per wrap in order to ensure that the product was not too dry). In fact, Mr. Hernandez states that "a customer doesn't want something dry" so New Image actively takes measures to ensure that the product remains moist. Id. at 131. Thus, there is no genuine dispute over whether the wraps are useable when dry.

[13] New Image also raises an argument regarding a rule of statutory construction, in which the court must construe taxability in favor of the taxpayer. Pl. Br. at 3–4, 8–10. This rule, however, applies only when there is unclear or ambiguous language within the statute or regulation that results in a doubtful interpretation of the statute. See Anhydrides & Chemicals, Inc. v. United States, 130 F.3d 1481, 1485–86 (Fed. Cir. 1997). New Image argues that because there is no guidance on how to properly weigh the wraps under 26 U.S.C. § 5702(o), the tax liability must be construed in favor of the lower weight. Pl. Br. at 3–4, 8–10, 36–37. New Image is misguided as the statute clearly states that the wraps made by New Image are subject to excise tax, see 26 U.S.C. § 5702(o), and that all excise tax is based on the weight of the product per pound or "fractional parts" thereof. 26 U.S.C. § 5701(g). Although there is no indication in the statute on the protocol to use when weighing the wraps, there is no ambiguity as to how the tax is imposed

unpersuaded. Assessing a product in its condition at importation is a longstanding tenet of

customs' law. See Worthington v. Robbins, 139 U.S. 337, 341 (1891) (noting that the court

determines dutiable classification "in the condition in which [a product] is imported"); see also

19 C.F.R. § 158.7 (noting that merchandise "shall be appraised in its condition as imported").

Although Worthington and its progeny involve the point at which classification is determined,

not the point at which Customs must assess the dutiable weight of a product, the court finds it

both consistent and reasonable for Customs to apply the Worthington standard in deciding when

to determine the dutiable weight of an import and whether to assess taxes on the "condition" of

the product at importation, i.e. the final homogenized product.

　　　For the reasons stated above, the court denies New Image's motion for summary

judgment insofar as it relates to Customs' reference to TTB Ruling 2009-1 and Customs'

determination that the excise tax on tobacco wraps includes additives essential to the final

product and grants defendant's motion on these matters as there is no genuine dispute of material

fact and defendant prevails as a matter of law.

## III.   The Validity of Customs' Procedures Used to Weigh Tobacco Wraps

　　　New Image raises two central issues with Customs' second weighing. First, it argues that

the record indicates that Customs' was biased in ordering the second testing and that the order

instructing the lab to reweigh the wraps evinced a results-oriented rationale for conducting the

second testing. Pl. Br. at 19–21, 32–34. Second, New Image contends that the way in which

Customs conducted its second testing did not conform to the Daubert standards of scientific

reliability. Id. at 20–21; Daubert v. Merrell Dow Pharms., Inc., 509 U.S. 579 (1993).

---

(per pound) and what is taxed (roll-your-own tobacco). 26 U.S.C. §§ 5702(o), 5701(g). The
statute need not specify the weighing procedures to provide sufficient clarity.

### a.   The Decision to Reweigh New Image's Wraps

New Image argues that the Government improperly weighed its wraps a second time using a different method in order to achieve higher weights. Pl. Br. at 15–18. New Image's argument is based on a document now before the court. In her memorandum ordering that the Customs' lab engage in new testing of New Image's products, import specialist Janet Ayers noted that drying out the wraps for twenty-four hours, as was done in the first weighing, resulted in a difference that "can be as much as 25% less" when compared to weights assessed immediately. See Ayers Memorandum, Ex. 1, ECF No. 94-2 (Apr. 3, 2012). New Image takes this as an indication that Customs' specifically sought out a higher weight, given that the resulting second weight average was "approximately 26% higher" than the first weight average. Pl. Br. at 20.

In the memorandum, Ayers references the TTB Ruling and her newfound understanding of how the first weighing occurred. As discussed earlier, Customs' decision that the weight needed to include the flavor additives was in accordance with law. Given this understanding, Customs properly assessed its testing procedures to ensure that they accounted for the entire taxable product. Although, as New Image points out, the TTB Ruling does not explain procedures for how to weigh wraps, Customs was correct in deciding that to weigh the product in the condition in which it would be "released from Customs custody," the product could not be left to dry out for twenty-four hours.  See TTB Ruling 2009-1 at 3. New Image points to no other facts that support the claim that the testing was impermissibly results-oriented and there is nothing else on the record that bolsters that inference.[14] Accordingly, even construing the facts

---

[14] The only other record evidence identified by New Image that tangentially supports this claim is a statement from Customs' Assistant Laboratory Director, Dr. Sheila Eng, stating that she did not believe that the first testing was flawed. See Pl. Br. at 19. But this mischaracterizes Dr. Eng's

and reasonable inferences drawn therefrom in New Image's favor, the court finds that New

Image is not entitled to summary judgment but rather grants defendant's motion for summary

judgment on this issue.

### b. Application of <u>Daubert</u> to Customs' Weighing Protocol

As noted above, the second weighing occurred with the understanding that the tobacco

wraps at least needed to be weighed immediately after opening in order to include the volatile

ingredients that Customs' decided needed to be included in the weighing to satisfy the excise tax

statute. New Image contends that Customs' was required to consider the <u>Daubert</u> factors in order

to devise proper testing protocols. Pl. Br. at 18–23, 29–30, 36. <u>Daubert</u> laid out non-exhaustive

factors for a court to consider in assessing the validity of scientific expert testimony. <u>See</u> <u>Daubert</u>

509 U.S. at 593–594. The factors are ones for a court to consider, not necessarily factors that

Customs must formally consider.

The Court of Appeals for the Federal Circuit has found <u>Daubert's</u> factors to be relevant in

customs cases "when the question involves a technical process where the reliability of a

scientific or technical methodology has been raised as an issue." <u>Libas, Ltd. v. United States</u>, 193

F.3d 1361, 1367 (Fed. Cir. 1999) (stating that the <u>Daubert</u> factors are an appropriate starting

point in certain Customs classification cases). Although <u>Libas</u> involved a classification case, the

court finds that the reasoning of that case applies here given the technical methodology at issue.

Accordingly, the court must ascertain whether the challenged methodology is scientifically valid

---

testimony. Although Dr. Eng was satisfied with the data of the first weighing, that weighing
occurred before Customs properly decided to include the volatile chemicals in the assessed
weight. Her satisfaction with the 2011 data at the time it was conducted does not equate to a
belief that the 2011 methodology was appropriate after Customs decided to include the additives
as part of the taxable product. Eng Deposition at 89, Ex. 4, ECF No. 94-2 (Oct. 28, 2016) ("Eng
Dep.").

and properly applied to the inquiry at issue. See Daubert, 509 U.S. at 592–93. The Daubert

factors are not exhaustive nor always all relevant to an issue, but include assessing: (1) the

testability of a given methodology, (2) whether the methodology has been subject to peer review

and publication, (3) the known or potential error rate, and (4) acceptance in the scientific

community. See Libas, 193 F.3d at 1366–67; Daubert, 509 U.S. at 593–94. Except for the first

factor, which is not in contention,[15] the court addresses each below.

Customs employed a method described as USP 1251 in weighing the tobacco wraps. See

"<1251> Weighing on an Analytical Balance" at 938–40, U.S. Pharmacopeia and National

Formulary, Vol. 1, Ex. 11, ECF. No. 107-12 (2011) ("USP 1251"). The court notes that New

Image does not challenge Customs' use of this method as being unpublished or lacking peer

review. Nonetheless, although the record does not explicitly indicate that the USP 1251 is subject

to peer review, it does make clear that this method is published and that U.S. Pharmacopeia

("USP") is an organization that sets validation standards. See id.; Spingarn Dep. at 59, Ex. 5,

ECF No. 94-3 (July 25, 2017) ("Spingarn Dep."). Accordingly, the court finds that this method

was published and at least open to peer review.

The record sufficiently indicates that the error rate of Customs' chosen methodology was

considered. First, USP 1251 discusses various ways in which data can be compromised and how

to avoid these issues. Second, Customs' lab reports indicate the standard deviation between the

weights and estimated uncertainty of the results. See Customs' Laboratory Reports, Ex. 19, ECF

No. 91-19 (Apr. 16–23, 2012) ("Customs' Lab Reports 2012"). New Image argues that a

---

[15] No party argues that determining the weight of a tobacco wrap is an untestable prospect and both parties have offered ways to accomplish such a task. Def.'s Mem. in Supp. of Def.'s Mot. for Summ. J. ("Def. Br.") at 18–24, ECF No. 91 (Dec. 7, 2018); Pl. Br. at 18–32. Thus, this factor does not require additional attention.

"validation study" is necessary to identify "product specific issues that might cause error in

testing," but fails to offer any support that such issues exist. Pl. Resp. at 7. Bare allegations that

there may be unknown issues with weighing tobacco wraps are not sufficient to raise doubt over

Customs' verified method of weighing products.

     In both Customs' first and second tests, the lab sought to achieve a steady weight. Eng

Dep. 43 (noting that lab accreditation requires that the lab measure the steady weight, or non-

fluctuating weight, of products). To achieve a steady weight by weighing the tobacco wrap

directly, both the Customs laboratory technician[16] and New Image's witness, Dr. Neil Spingarn,

agree that the wrap needs to be allowed to dry out for some length of time after opening to

militate against weight fluctuations caused by the dissipation of volatile additives once the

package is opened. Eng Dep. at 42–43; Spingarn Dep. at 47–51, 57. In line with this

understanding, when Customs conducted its first test it did just that and allowed the wraps to dry

out for twenty-four hours prior to weighing them to achieve a steady weight. See Customs'

Laboratory Report at 28–40, Ex. 3, ECF No. 94-2 (2011) ("Customs' Lab Reports 2011"). After

it was determined, however, that the additives needed to be included in the dutiable weight of the

product, Customs decided to employ a different method of weighing that still resulted in a steady

weight but did not allow for the dissipation of the additives. See Eng Dep. at 38. In accordance

with USP 1251 and Customs' regulations, the lab used the indirect method to determine the

dutiable weight. See USP 1251; 19 C.F.R. § 159.22(a).[17] Dr. Eng explains that the indirect

---

[16] New Image raises the point that import specialists Janet Ayers and Donna Peterson do not
have chemistry expertise as support for the notion that the second testing lacked scientific
reliability. Pl. Br. at 20–21. But as New Image later notes, see id. at 21, it is the Customs lab
personnel that determine what procedures to use, Ayers and Peterson's lack of scientific
background is immaterial.

[17] 19 C.F.R. § 159.22(a) reads:

method was used to account for the volatile additives that would have otherwise "gassed off" when the wrap was opened and prevented Customs' from achieving a stable weight.[18] See Eng Dep. at 57–59. New Image's expert does not dispute this assertion and, in fact, agrees that the flavor additives dissipate as the product dries out, preventing a stable weight from being assessed immediately after opening the package. See Spingarn Dep. at 37–48.

Despite New Image's protestations to the contrary, the second weighing method used by Customs does not result in an inconsistent or unrepeatable result, but achieves a steady weight. See Pl. Br. at 31. Dr. Eng's testimony and the lab reports themselves elucidate that the indirect method achieves a stable weight of the wrap by weighing the empty package and non-wrap components (such as the straw), which do not change weight, and subtracting that from the total weight of the unopened package. Eng Dep. at 31–33, 52, 59; Customs' Lab Reports 2012 (describing the testing procedures and listing the weights of wraps using both the indirect method ultimately adopted and the weight of the wrap when taken directly out of the packaging). Dr. Spingarn does not directly challenge the scientific validity of Customs' testing in this regard, but instead seems to primarily take issue with the testing based on an understanding that the flavor additives should not be included in the taxable weight. See Spingarn Dep. at 37–38. His

---

(a) Determination of net weight. The net weight of merchandise dutiable by net weight, or upon a value dependent upon net weight, shall be determined insofar as possible by obtaining the actual weight, or by deducting the actual or schedule tare from the gross weight. Actual tare may be determined on the basis of tests when the tares of the packages in a shipment are reasonably uniform.

[18] Customs did assess the weight of the wraps directly during the second testing immediately after opening the product but did not use these weights in assessing tax liability given their expected instability. The average difference between this unstable weight and the weight calculated using the indirect method was, nonetheless, seemingly very small. See Customs' Lab Reports 2012 (showing that the average difference in the two weights ranged between 0.28% and 0.83%).

testimony, thus, is not probative because the court has sustained Customs decision that the additives <u>should</u> be included in the weight.

Because USP 1251 is a valid procedure, New Image only properly challenges the methodology insofar as it is not tailored specifically to the weighing of tobacco wraps that are "highly volatile, weigh less than one gram, and are subject to dramatic weight fluctuations." Pl. Resp. Br. at 7.[19]  But New Image's argument is internally inconsistent. As noted earlier, New Image argues that this Court should adopt Customs' first weighing from 2011. Pl. Br. at 32, 38. But notably this method was also conducted in accordance with USP 1251 standards. <u>See</u> Customs' Lab Reports 2011. Although the first weighing used a drying out procedure rather than an indirect one to obtain a steady weight, both were done using verified USP procedures. Ultimately, there is simply no support beyond bare assertions that this method lacks support in the scientific community.

There are no material facts that preclude a finding of summary judgment. New Image's challenges to the reliability[20] of Customs' weighing methodology are without merit. Customs' use of the indirect method in weighing the wraps was in accordance with law.

---

[19] New Image also, for the first time, raises additional challenges to the USP methodology in its reply brief. The court declines to consider these late-raised arguments but notes, in any event, New Image fails to cite adequate support to substantiate these new challenges. <u>Novosteel SA v. United States</u>, 284 F.3d 1261, 1274 (Fed. Cir. 2002) (holding that arguments first waived in reply briefs are waived).

[20] New Image makes one additional challenge to Customs' procedures, arguing that there is an underlying "systematic bias." Pl. Br. at 32–33. This argument appears to stem from Dr. Spingarn's testimony regarding the difference between the weights Customs obtained from the indirect method and the weight obtained from directly weighing the wrap after removing it from the package. <u>See</u> Pl. Br. at 24–25 (citing Dr. Spingarn's testimony). The Government asserts that the difference is due to the "gassing off" of the additives upon opening. Def. Resp. at 23–25. New Image has not put any evidence on the record that sufficiently calls in to question Customs' procedures or explanations for the difference. Even assuming that there is some unaccounted-for reason why the indirect method might produce higher rates than directly weighing the wrap, the

## CONCLUSION

For the reasons stated above, the court grants defendant's motion for summary judgment

and denies New Image's motion for summary judgment.[21] Judgment will be entered accordingly.

/s/Jane A. Restani
Jane A. Restani, Judge

Dated: July 23, 2019
New York, New York

---

fact is immaterial because, even if so, it is not enough to overcome the overwhelming evidence
that Customs' test was reliable. See Liberty Lobby, 477 U.S. at 248 (noting that a fact is not
material if it would not change the outcome).

[21] Because the court grants the Government's motion, it does not address the Government's
alternative argument. The Government proposes that if the court does not adopt the 0.915 gram
per wrap as the proper weight for calculating the excise tax then, in the alternative, the court
should apply a weight of 0.874 grams per wrap, which is the weight New Image recorded at the
end of its production process. Def. Br. at 32.